**FRATERNAL ORDER OF POLICE; Ocean City Lodge No. 10; a Maryland not-for-profit corporation; Jeffrey A. Stutzel, Plaintiffs–Appellants,**

v.

**MAYOR AND CITY COUNCIL OF OCEAN CITY, MARYLAND, Defendant–Appellee,**

**Grand Lodge of the Fraternal Order of Police, Amicus Curiae.**

No. 89–1815.

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1990.

Decided Oct. 15, 1990.

---

920

Andrew David Freeman, Brown & Goldstein, Baltimore, Md., argued (C. Christopher Brown, Brown & Goldstein, Baltimore, Md., on brief), for plaintiffs-appellants.

James Petty Garland, Semmes, Bowen & Semmes, Baltimore, Md., argued (Kathleen Pontone, Sharon Reynolds Stanton, Semmes, Bowen & Semmes, Baltimore, Md., on brief for defendant-appellee.

Anthony C. Busillo, II, Harrisburg, Pa., for amicus curiae.

Before ERVIN, Chief Judge, SPROUSE, Circuit Judge, and SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.

SPROUSE, Circuit Judge:

The Fraternal Order of Police (FOP) of Ocean City, Maryland, appeals from summary judgment granted by the district court to the mayor and city council members of Ocean City, Maryland. In the underlying action, the FOP brought a 42 U.S.C. § 1983 action against Ocean City and individual officials alleging that enforcement of a city charter provision, which proscribed city officials from engaging in collective bargaining with city employees, violated the FOP's rights under the First and Fourteenth Amendments. In granting summary judgment for the defendants, the district court held that the charter provision was not overly broad or vague and, therefore, not facially unconstitutional. It also held that the defendants had not violated the FOP's constitutional rights in the manner in which they applied the charter provision. We affirm.

## I

Section C–1005(B) of the Ocean City charter provides:

> No union, association, club, etc., or other collective bargaining organization shall be recognized as a bargaining agent or representative of any city employee, group of city employees or all of the city employees.

Section C–1005(C) provides that any person who violates this section is guilty of a misdemeanor, punishable by a maximum fine of $100 or thirty days in jail, or both. A person so convicted is barred from Ocean City employment for five years. *See* § C–1005(C).

Plaintiffs allege that at a series of meetings with various city officials, representatives of the FOP attempted to discuss matters relating to their city employment. At the outset of these private meetings, held in hotel rooms and offices of individual city officials, plaintiffs were told that they would be heard in their individual capacities, but not as representatives of the FOP. One meeting occurred in a local hotel room among three members of the city council, Albert Warning, a former FOP president, and Victor Bunting, a former FOP vice-president. The purpose of this meeting was to foster frank dialogue about police working conditions. At the outset of this meeting, one council member stated that the city officials would meet with "Albert and Victor [as individuals], but not as president and vice president of the FOP."

Another instance occurred during a meeting between another former president of the FOP and the City Manager of Ocean City. The City Manager, who had an "open-door policy" to talk with anyone about anything, met with the President of the FOP to discuss employment matters. During this meeting, the City Manager told the FOP representative that he would meet with him as an individual, but not as president of the FOP.

All other alleged incidents by plaintiffs involved attempted meetings with individual city officials. No incident of a city official refusing to speak to an FOP representative as a representative occurred at a city council meeting or any other meeting opened to the general public.

## II

Based on these facts, the FOP first argues that the city provision, on its face, violates their First Amendment rights. We disagree. Section C–1005(B) prohibits Ocean City officials from "recognizing" any collective bargaining organization as a bargaining agent or representative of any city employee or group of employees. The First Amendment protects the right to speak freely, to advocate ideas, and to petition government for redress of grievances, but it does not guarantee the right to collective bargaining. Consequently, nothing prohibits a government body from proscribing collective bargaining. As the Supreme Court stated in *Smith v. Arkansas State Highway Employees, Local 1315*, "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it." 441 U.S. 463, 465, 99 S.Ct. 1826, 1828, 60 L.Ed.2d 360 (1979) (per curiam).

The FOP, however, asserts that the controverted charter provision goes beyond barring collective bargaining to bar any speech for any purpose by any representative of the FOP. It does not. The term "recognize," as the district court correctly concluded, "is clearly used in the labor law context, meaning an employer's acknowledgment that a collective bargaining representative has been designated by a majority of employees in a designated bargaining unit and thus the employer is obligated to bargain exclusively with that representative." *See also Henrico Professional Firefighters Ass'n, Local 1568 v. Board of Supervisors*, 649 F.2d 237, 247 (4th Cir. 1981); *Abbott v. City of Virginia Beach*, 689 F.Supp. 600, 602 (E.D.Va.1988), *aff'd*, 879 F.2d 132 (4th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990). The charter provision only prohibits city officials from "recognizing" the FOP as the collective bargaining agent for a group of city employees. No more.

### III

■■■ The FOP's second argument is that the charter provision, as applied, violates the First Amendment because it prevents its officials from speaking as representatives of the FOP. It correctly points out that the constitutional right to free speech is not conditioned on the status of the speaker as an individual or as a representative of others. *See Henrico*, 649 F.2d at 243. As a corollary to this argument, the FOP further contends that city officials have construed § C–1005(B) to prohibit them from speaking to any representative of the FOP on any matter, whether or not it relates to collective bargaining.

In addition to *Henrico*, the FOP cites *Hickory Fire Fighters Ass'n, Local 2653 v. City of Hickory, North Carolina*, 656 F.2d 917 (4th Cir.1981), and *Local 2106, Int'l Ass'n of Firefighters v. Rock Hill, South Carolina*, 660 F.2d 97 (4th Cir.1981). Each of these three cases decided by this Court involved prohibitions on speech by representatives of public employee groups at public meetings. In *Henrico*, the Board of Supervisors of Henrico County, Virginia, regularly allowed members of the public and representatives of organizations to address board meetings but refused presentations by representatives speaking on behalf of county employees solely because they spoke as representatives. *Henrico*, 649 F.2d at 240. Similarly, in *Hickory* and *Rock Hill* the respective city councils refused to allow representatives of public employees to speak at city council meetings. Consequently, we held in each case that a government body that regularly allows public comment by individuals and representatives of associations may not deny a representative of a public employee association the opportunity to be heard on employment matters absent compelling justification. *Henrico*, 649 F.2d at 243; *Hickory*, 656 F.2d at 920; *Rock Hill*, 660 F.2d at 100–01.

■■■ The city council fora implicated in *Henrico*, *Hickory*, and *Rock Hill* were fora traditionally used for free speech communication.\* We accordingly considered them principally under a public/private forum analysis. In reaching its decision, the district court here likewise applied a public/private forum analysis. Characterizing the meetings between the FOP representatives and city officials as private fora meetings, it concluded that no constitutional violation had occurred. Our agreement with its ultimate resolution of the second issue raised by the FOP, however, does not necessarily implicate forum analysis. The

---

\* Plaintiffs have never been denied the right to speak as representatives of the FOP before meetings of the city council that have been open to the public. In fact, evidence indicated that FOP officers often addressed public meetings of the city council, without any qualification as to whom they represented. And, absent a compelling justification to the contrary, the FOP representatives can speak or advocate on any matter, including collective bargaining issues. *See Hen-* *rico*, 649 F.2d at 242 (citing *Madison Joint School District v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976) for the proposition that a public employee had a constitutional right to address his employer at a public meeting even on matters then pending in collective bargaining negotiations). The charter provision only prohibits a city official from negotiating or bargaining with a representative of the FOP.

question whether hotel rooms and private offices are public or private fora or in any sense comprise a forum for First Amendment communication purposes might be problematic. However, as we understand the Supreme Court's teachings in *Smith* and *Minnesota State Bd. For Community Colleges v. Knight,* 465 U.S. 271, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984), that question has no bearing on the FOP's rights to present their ideas to Ocean City officials.

In *Smith,* a state commission refused to consider grievances submitted by union officials, but would consider any grievance submitted by an individual employee. In upholding this practice, the Supreme Court stated:

> The public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so. But the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it.
>
> \* \* \* \* \* \*
>
> Far from taking steps to prohibit or discourage union membership or association, all that the Commission has done in its challenged conduct is simply to ignore the union. That it is free to do.

*Smith,* 441 U.S. at 465, 466, 99 S.Ct. at 1828, 1829.

In *Knight,* the Court addressed the constitutionality of a state statute which restricted the access of state employees to participate in administrative "meet and confer" sessions. In holding that the employees party to the action did not have a constitutional right to participate in these meetings, the Supreme Court stated:

> The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy.
>
> \* \* \* \* \* \*
>
> Policymaking organs in our system of government have never operated under a constitutional constraint requiring them to afford every interested member of the public an opportunity to present testimony before any policy is adopted. Legislatures throughout the Nation, including Congress, frequently enact bills on which no hearings have been held or on which testimony has been received from only a select group. Executive agencies likewise make policy decisions of widespread application without permitting unrestricted public testimony. Public officials at all levels of government daily make policy decisions based only on the advice they decide they need and choose to hear. To recognize a constitutional right to participate directly in government policymaking would work a revolution in existing government practices.

*Knight,* 465 U.S. at 283, 284, 104 S.Ct. at 1065, 1066. The rule announced in *Knight* demonstrates that neither the FOP nor its individual members enjoy a constitutional right to participate in governmental policymaking under the circumstances present in this case.

■ In sum, the right to choose a spokesperson to advocate a group's collective views lies implicit in the speech and association rights guaranteed by the First Amendment. However, the First Amendment does not demand that government officials be accessible to all who wish to influence their policy decisions. Thus, in our view, *Smith* and *Knight* stand for the proposition that the city officials were free to refuse to speak with whomever they chose—be it private individuals or representative associations.

### IV

■ Plaintiffs also allege an Equal Protection Clause violation based on the above recited facts. Admittedly, government action which allegedly permits some to speak, but denies the opportunity to others raises an "equal protection claim ... [that] is closely intertwined with First Amendment interests." *Police Department of the City of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972); *see also Henrico,* 649 F.2d at 241. However, plaintiffs' First Amendment argument "fares no better in equal protection garb."

**924**

*Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 54, 103 S.Ct. 948, 959, 74 L.Ed.2d 794 (1983). As we have explained, plaintiffs do not have a First Amendment right to require government officials to listen to them. Thus, because no fundamental right has been burdened, the charter provision " 'need only rationally further a legitimate state purpose' to be valid under the Equal Protection Clause." *Knight,* 465 U.S. at 291, 104 S.Ct. at 1069 (quoting *Perry,* 460 U.S. at 54, 103 S.Ct. at 959). In our view, Ocean City has a legitimate state interest in retaining the right to deal directly with its own employees rather than through a collective bargaining agent. Concomitantly, the charter provision, which prohibits only the recognition of a bargaining agent for collective bargaining purposes, rationally furthers this legitimate state interest.

In view of the above, the judgment of the district court is affirmed.

AFFIRMED.